[No. C028957. Third Dist. Dec. 31, 1998.]

CRAIG A. SCHWEISINGER et al., Plaintiffs and Respondents, v.
BILL JONES, as Secretary of State, etc., Defendant and Appellant.

COUNSEL

Knox, Lemmon & Anapolsky, Thomas S. Knox, Angela L. Schrimp and Glen C. Hansen for Defendant and Appellant.

Strumwasser & Woocher, Fredric D. Woocher, Michael J. Strumwasser and Raleigh H. Levine for Plaintiffs and Respondents.

OPINION

**MORRISON, J.**—The People, acting through their reserved initiative powers, enacted the Political Reform Act of 1990, by passing Proposition 140 at the November 1990 General Election. Proposition 140 included a term limit for specified state officers, and was largely upheld by the California Supreme Court. (*Legislature* v. *Eu* (1991) 54 Cal.3d 492 [286 Cal.Rptr. 283, 816 P.2d 1309].)

Members of the Assembly are limited by Proposition 140 to three terms: "The Assembly has a membership of 80 members elected for 2-year terms. No member of the Assembly may serve more than 3 terms." (Cal. Const., art. IV, § 2, subd. (a).)

The trial court in this case concluded that a person who had served two terms and part of a third term was entitled to seek another term. This

interpretation directly conflicts with the purpose of Proposition 140, as manifested by its language, and would lead to irrational results. We conclude that for purposes of the term limit provisions, service of any part of a term "counts" as service of a full term, with a single exception as drafted by the People. Accordingly, we reverse with directions.

## I.

The voters of the 71st Assembly District chose Doris Allen to represent them in the 1990 General Election. She served her full term. Apparently as a result of redistricting (see *Wilson* v. *Eu* (1992) 1 Cal.4th 707, 780-781 [4 Cal.Rptr.2d 379, 823 P.2d 545]), she ran for election in the 67th Assembly District in the 1992 and 1994 General Elections. The voters chose her to represent them each time. She served her full term following the 1992 election, and took office after the 1994 election. She served beginning in December 1994 and rose to the rank of Speaker of the Assembly.

At this point, the voters became dissatisfied with their chosen representative, and exercised their reserved power of recall; over 65 percent of the vote was against Allen. Allen was removed from office in November 1995.

In February 1998, Allen filed her declaration of intention to seek nomination to election to her former office, member of the Assembly for the 67th Assembly District, in the June 1998 Primary Election.

Bill Jones, the Secretary of State, returned her filing papers, stating that acceptance of the papers would be contrary to Proposition 140. Allen and a constituent, Craig A. Schweisinger, filed a petition for writ of mandate against Jones in Sacramento County Superior Court. The court granted the petition. Jones timely appealed and sought writ relief.

We summarily denied Jones's application for writ relief from the trial court's decision. Thus, Allen's name appeared on the ballot at the 1998 Primary Election but the voters of Allen's party chose another candidate. Accordingly, there is no immediate relief at issue.

## II.

Jones maintains that the appeal is not moot and the point merits discussion. Although Jones's position is not expressly disputed by Allen, a moot case cannot be forced on the court by acquiescence of the parties. (See *National Assn. of Wine Bottlers* v. *Paul* (1969) 268 Cal.App.2d 741, 746-747 [74 Cal.Rptr. 303].)

 However, at bottom the case presents an important question of law which will certainly recur, but which, in the nature of the case, is likely to escape review. Further, the case is one of great public importance. (See *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487]; *American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d 167, 181-182 [10 Cal.Rptr. 647, 359 P.2d 45, 94 A.L.R.2d 1259].) Allen and others who have served parts of terms are entitled to know the application of the term limit provision of the Constitution to their political aspirations. The time in which to obtain appellate review of election matters is severely compressed, due to the need to prepare ballots. (See, e.g., *Fields* v. *Eu* (1976) 18 Cal.3d 322, 325 [134 Cal.Rptr. 367, 556 P.2d 729].) In the event a person was *elec*ted and was later determined to be ineligible for office, a removal proceeding might be required, and, most importantly, the voters would be deprived of their chosen representative, necessitating another costly election. Finally, Jones is concerned about the possible preclusive effect of the superior court judgment, and claims of preclusion have at times been asserted in electoral cases. To avoid these problems, we shall decide the issue now.

### III.

 The provision at issue reads "The Assembly has a membership of 80 members elected for 2-year terms. No member of the Assembly may serve more than 3 terms." (Cal. Const., art. IV, § 2, subd. (a).) Two possible meanings are tendered. Allen construes "term" to mean a full term, so that she is not precluded from another term because she has served only two terms as of yet. Jones construes "term" as used in "serve more than 3 terms" to embrace any portion of a term.

 "Term" has no fixed meaning. "[I]t is impossible to formulate any definition which will comprehend all of the uses made of the word. Therefore, it is necessary in each case to interpret 'term' so as to effectuate the statutory scheme pertaining to the office under examination. [Citations.] In doing so, we indulge in a presumption that constitutional and legislative provisions were not intended to produce unreasonable results. [Citation.]" (*Barber* v. *Blue* (1966) 65 Cal.2d 185, 188 [52 Cal.Rptr. 865, 417 P.2d 401]; see *Caldwell* v. *Bruning* (1966) 64 Cal.2d 111, 117 [48 Cal.Rptr. 849, 410 P.2d 353].)

 The primary purpose of Proposition 140 is to limit the advantages of incumbency and eliminate "a class of career politicians, instead of the citizen representatives envisioned by the Founding Fathers." (Cal. Const., art. IV, § 1.5.)

For four reasons, we conclude the language employed by the People, viewed in light of the purpose they sought to achieve, must be read to bar Allen from future election to the Assembly.

First, the People did not say that one may serve three terms, rather they said that "no member . . . may serve more than 3 terms." This is a lifetime limitation. (*Legislature* v. *Eu, supra,* 54 Cal.3d at pp. 505-506.) Were Allen to serve a third full term, she would, in her post-Proposition 140 career, have ended up *serving* in office "more" than three terms—she would have served three terms plus part of a term. By virtue of the recall, she would be able to "serve" longer than colleagues who had not been recalled. The trial court's conclusion has the effect of validating Allen's "right" to finish her term, or of discounting the term. This is contrary to the normal understanding of a recall, which is an expression of the voters' dissatisfaction with an official. An official does not have the right to avoid the effects of a recall. (*Bonner* v. *Belsterling* (1911) 104 Tex. 432, 438 [138 S.W. 571, 575] ["the law provided for the recall at the time the plaintiff in error was elected to his office, and he took it upon the condition that the people might remove him from office"]; *Hilzinger* v. *Gillman* (1909) 56 Wash. 228, 235 [105 P. 471, 474]; see *Good* v. *Common Council* (1907) 5 Cal.App. 265, 267-268 [90 P. 44] ["A responsible government, however, is the very foundation of the republican system, and there appears no reason why a representative should not be made to retire at any time at the request of the people, as well as at the end of a fixed period."].) An official who is recalled—or for that matter, has resigned or is impeached—should have no ability to "serve" a greater duration in office within the meaning of the California Constitution than one who has not. This result would violate the expressed will of the People. There is no ambiguity tendered about the meaning of "serve" or "term" which would account for this result. The only way Allen could avoid this result would be by leaving her last term after serving so much of her last term as, in effect, to complete the uncompleted portion of her aborted term. That possibility is absurd, both because there is no clear mechanism for enforcement and because it would necessitate a special election to fill the vacated seat. "As a general rule, there is a strong presumption against a legislative intent to create a condition which may result in a vacancy. [Citations.]" (*Johnson* v. *Collins* (1970) 11 Ariz.App. 327, 331 [464 P.2d 647, 651]; see *Brodie* v. *Campbell* (1860) 17 Cal. 11, 22. ["The consequence of the construction contended for by appellant would be to leave an *interregnum* in this important office, which we cannot suppose was designed by the Legislature."]; *State* v. *Johnson* (1925) 135 Wash. 109, 113 [237 P. 12, 13].) Therefore, by use of the phrase barring *service* of "more" than three terms, the People expressed the view that three terms is an absolute maximum, and did not provide for service of, say, three and one-half terms.

Second, in connection with the last statement, the People did allow for service of "more" than three terms in one limited exception which does not cover Allen's situation. A provision of Proposition 140 states that "[t]hose limitations shall not apply to any unexpired term to which a person is elected or appointed if the remainder of the term is less than half of the full term." (Cal. Const., art. XX, § 7.) This clarifies an ambiguity which might exist, regarding the "countability" of the remaining portions of vacant terms, that is, whether filling such position would constitute one of the person's limited terms. (See, e.g., *Lungren* v. *Davis* (1991) 234 Cal.App.3d 806, 811-828 [285 Cal.Rptr. 777] [concluding appointee who fills vacant superior court seat does not serve a "term"; distinguishing cases of legislators "and other officers having fixed and definite terms of office"].) Were Allen's interpretation correct, this provision would be unnecessary. Laws are interpreted to give effect to all provisions. (See Civ. Code, § 3541; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Further, by expressing one exceptional situation in which it is possible to *serve* "more" than three terms, the People are presumed to have forbidden other exceptions. (See *Collins* v. *Riley* (1944) 24 Cal.2d 912, 915-916 [152 P.2d 169] [constitutional limitation on amount of legislative compensation as to particular items of legislative expense does not limit amount as to others; if other limits were desired, they would have been spelled out]; see *City of National City* v. *Fritz* (1949) 33 Cal.2d 635, 636 [204 P.2d 7] [exceptions narrowly construed].) ■ The California Constitution "is not a grant of power but rather a limitation or restriction upon the powers of the Legislature [citations] and '. . . we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited.' [Citation]." (*Collins* v. *Riley, supra,* 24 Cal.2d at p. 916; *Schabarum* v. *California Legislature* (1998) 60 Cal.App.4th 1205, 1217 [70 Cal.Rptr.2d 745].) ■ The People, through a reform measure designed to severely limit incumbency, prohibited service of more than three terms, subject to a single defined exception. The exception should not be read broadly and other exceptions are precluded by the doctrine, *expressio unius est exclusio alterius.* (See *Lake* v. *Reed* (1997) 16 Cal.4th 448, 466-467 [65 Cal.Rptr.2d 860, 940 P.2d 311]; *People* ex rel. *Cranston* v. *Bonelli* (1971) 15 Cal.App.3d 129, 135 [92 Cal.Rptr. 828]; cf. *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 811-812 [151 P.2d 505, 157 A.L.R. 324] [doctrine will not apply where it will lead to absurd result or frustrate obvious purpose of provision].)

Third, Allen's interpretation would create a loophole which would frustrate the intention of the People. A popular politician could run for office

repeatedly by resigning just before the end of each term, so that none of his or her terms would "count" toward the term limitation. For example, John Smith, who is very popular, runs for his first Assembly term and wins. While in office, he runs for and wins another election. Just before the end of term one he resigns. He takes office shortly thereafter at the beginning of the "second" term. He does this repeatedly, and ends up serving most of 10 or 15 terms, but under Allen's interpretation he has not even served 1 "countable" term for the purposes of the term limitation provisions. Such wholesale evasion would be absurd, therefore we reject the interpretations which would allow it.

Regarding this example of an absurd result, we eschew the trial court's implication that the supposed intent of a person leaving office is constitutionally significant. The trial court discounted this hypothetical "because you're talking about a person who deliberately on their [sic] own and due to their [sic] own actions resign[s] from the office before their [sic] term has been completed." It is not for the courts to divine the intention of a person leaving office in order to determine if he or she is eligible for that or another office—that is a matter for the voters to consider. Allen's personal preference is irrelevant.

Fourth, at common law, where no provision fixed the length of a term of office, the shortest permitted term was implied. (Annot., Term of Office Where No Time Fixed (1932) 80 A.L.R. 1290; (1941) 135 A.L.R. 1173, and permanent supplements.) As a corollary, where a statutory provision could fairly be read as setting forth either of two periods in office, the shorter period was implied. (*Aggeler* v. *Dominguez* (1933) 217 Cal. 429, 433 [19 P.2d 241]; *People* v. *Brenham* (1851) 3 Cal. 477, 487 (opn. of Hastings, C. J.) ["we know of no better rule than to follow the established policy of the State Government, from its origin, which evidently is to make elective all offices . . . at the shortest periods which the convenience of the public will permit"]; *Opinion of the Justices* (Del. 1974) 330 A.2d 764, 767; *Chamski* v. *Cowan* (1939) 288 Mich. 238, 246-247 [284 N.W. 711, 713-714]; *People* ex rel. *Eldred* v. *Palmer* (1897) 154 N.Y. 133, 140 [47 N.E. 1084, 1085]; *State* v. *McKay* (1913) 249 Mo. 249 [155 S.W. 396, 397]; Mechem, Public Offices and Officers (1890) § 390, pp. 255-256 ["Where a constitutional provision prescribing the term of a public office is uncertain or doubtful in its construction, that interpretation will be adopted which limits the term to the shortest time."]; 3 McQuillin, The Law of Municipal Corporations (rev. 3d ed. 1990) Tenure, § 12.108, p. 522 & fn. 23 [citing *Aggeler, supra*, 217 Cal. 429].) By analogy, assuming Proposition 140 can fairly be read as Allen reads it, given the circumstances of the adoption of Proposition 140, that is a comprehensive remedial scheme to oust career politicians, this

canon of construction bolsters the conclusion that we should reject Allen's proffered interpretation and adopt Jones's, which more fully advances the purposes immanent in the initiative.

## IV.

Allen makes a number of arguments contesting this conclusion, none of which persuades.

First, Allen urges that if the People meant that service of a partial term would count the same as service of an entire term, they would have used different language, such as barring *election* to more than three terms, or barring *taking a seat* more than three times, instead of barring service of more than three undefined "terms." We know the term "election" was not desired because the People also wanted to "count" *appointive* terms, except where "the remainder of the term is less than half of the full term." (Cal. Const., art. XX, § 7.) Barring being "seated to a term" is an awkward way of phrasing the desired limitation, although it, too, would have achieved the desired result. But the fact that another wording could have been used does not mean the wording which was used does not work. Allen points to Proposition 131, which was defeated at the 1990 General Election. That was a "weaker" term limit measure which would have barred persons "elected" to office a certain number of times (*six* terms for members of the Assembly) from running again "until one full term has intervened." (Ballot Pamp., Gen. Elec. (Nov. 6, 1990) Prop. 131: Text of Proposed Law, p. 102, italics omitted.) Divining the People's "intent" by looking at a measure they *rejected* is, indeed, a dubious undertaking, if for no other reason than different voters may have been animated by different motivations. (See *U.S. v. Estate of Romani* (1998) 523 U.S. 517, __-__ [118 S.Ct. 1478, 1488-1489, 140 L.Ed.2d 710, 726-727] (conc. opn. of Scalia, J.).) Moreover, realistically, it appears the main reason Proposition 131 lost is because it expressly eschewed lifetime limits and it allowed more total consecutive terms, not because it spoke in terms of "election" to office rather than "service."

Second, Allen makes an out-of-context reading of a passage in *Legislature v. Eu, supra,* 54 Cal.3d 492, 517, where the court said, "As previously explained, Proposition 140 imposes a lifetime ban on legislators once they have completed the maximum number of terms." The import of this passage is the *lifetime* nature of the ban; the court did not purport to construe the initiative's use of "serve" or "term" in a manner relevant to this case. ▮ Cases are not authority for points not considered. (*Hart* v. *Burnett* (1860) 15 Cal. 530, 598.)

■ Third, Allen points to a number of cases reciting the unremarkable conclusion that "term" often refers to the period of the office, not the time someone happens to fill the office. For example, former Presiding Justice Chipman so interpreted the word "term" in connection with a limitation on the practice of legislators accepting other offices "during the term for which he shall have been elected[.]" (Former Cal. Const., art. IV, § 19; see Cal. Const., art. IV, § 13.) "The word 'term' used in the section refers, we think, to the period for which the petitioner was elected and not merely to his incumbency. [Citation.] When we speak of the 'term' for which an officer has been elected we mean the period of time fixed by statute during which he may serve and not to the time he may happen to serve." (*Chenoweth* v. *Chambers* (1917) 33 Cal.App. 104, 107 [164 P. 428]; see *Lungren* v. *Davis*, *supra*, 234 Cal.App.3d 806 [construing similar limitation on judges set forth in Cal. Const., art. VI, § 17].) There the word "term" was interpreted broadly, to further the remedial purpose of the limitation at issue. But, as stated by the California Supreme Court in *Barber* v. *Blue, supra,* 65 Cal.2d 185, 187-188, the meaning of "term" depends on the particular statutory scheme at hand. (See also *Younger* v. *Board of Supervisors* (1979) 93 Cal.App.3d 864, 872 [155 Cal.Rptr. 921].) Given the results which would be allowed by Allen's interpretation, described above, we are not persuaded to adopt it.

Fourth, Allen's claim that the purpose of Proposition 140 would not be impaired by her future candidacy is unavailing. She claims that because she is no longer in office, she wields no "power of incumbency." Not so. Although not technically an incumbent, she is assuredly a political "insider" and not a citizen representative. That partly explains why Proposition 140 was interpreted to impose *lifetime bans*, to prevent politicians from sitting out of office for a term and then returning. We observe that this result would have been permitted by the rejected initiative, Proposition 131.

Fifth, Allen's claim that limitations on the voter rights to choose candidates must be narrowly construed is, in effect, largely a quarrel with the California Supreme Court's decision in *Legislature* v. *Eu, supra,* 54 Cal.3d 492. That court interpreted Proposition 140 to impose a lifetime ban. (See *Bates* v. *Jones* (9th Cir. 1997) 131 F.3d 843 [upholding Proposition 140 against federal challenges].) The canon of construction calling for narrow restrictions on the rights of voters does not allow rewriting of language and does not compel adopting an interpretation which is absurd or contrary to the will of the People. This is especially true where the purpose of the initiative itself was to limit voter choices. (See *Hoogasian Flowers, Inc.* v. *State Bd. of Equalization* (1994) 23 Cal.App.4th 1264, 1277-1278 [28 Cal.Rptr.2d 686].)

That purpose was upheld by the California and federal courts and is the law of California.

Sixth, Allen contends that Jones misunderstands the exception set forth in California Constitution, article XX, section 7, discussed above. She contends it would not be "redundant" or "surplusage" if we adopted her claims regarding what is service of a term. She posits the case of an already "termed-out" official who is appointed to fill out the remainder of a term vacant due to death of the incumbent. But although the facts there contemplate that the "more than" service follows the three full terms, rather than here where Allen served two full terms, the "more than" partial term occurred in the middle, and she wants a third full term at the end, the timing of where the "more than" service occurs is irrelevant for purposes of the constitutional ban. As stated above, we disagree; if service of less than a term does not count, there is no reason for the exception. Moreover, Allen's contention in this regard does not answer the *expressio unius* argument: Because the People specified one particular circumstance where service of more than three terms is possible, other circumstances are precluded. Put another way, the exception states the only time that service of less than a full term does not "count" towards the term limitation.

In this connection we observe that Allen never claimed to come within the exception, so her implication that Jones somehow raises the limits of the exception as a "strawman" argument is incorrect. He points to it to show the full expression of the People's will. Allen admits that "Neither a quarter term, a half term, nor three-quarters of a term is a term, but someone who serves three and a quarter terms, three and a half terms, or three and three-quarters terms serves 'more than' 3 terms." There is but one case where a member of the Assembly may *serve* "more" than three terms, and Allen does not fit that case.

## V.

We conclude that Allen cannot run for the office of member of the Assembly because were she elected, she would end up serving "more" than three terms in that office, a result which is expressly forbidden by the California Constitution. The Elections Code prohibits the listing of a candidate for office if that person is not "entitled to be voted for." (See Elec. Code, § 8125.) Accordingly, Jones properly refused to accept Allen's filing papers and the trial court should not have entered judgment in her favor.

## DISPOSITION

The judgment is reversed with directions to the trial court to enter a judgment in favor of Bill Jones, Secretary of State. Schweisinger and Allen shall pay Jones's costs on appeal.

Scotland, P. J., and Puglia, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.