The Honorable Jim Magnus State Representative 10 Cimarron Valley Drive Little Rock, Arkansas 72212-3502
Dear Representative Magnus:
This is in response to your request for an opinion on the following questions:
 1. If a legislator voluntarily resigns from office prior to the end of his or her term, is the unfinished term counted against the term limit?
 2. Also, if the law is unclear in this area, would a statute prohibiting such behavior (and consistent with the term limits amendment) have legal force to prohibit a candidate from filing?
You state that it is your understanding that legislators elected to finish partial terms do not have to count the initial partial term against their limit. You also state, however, that this is a very different situation from voluntarily giving up a seat early. Clearly, you note, being able to resign a seat and then run again later would violate the spirit of term limits and open a door for abuse. Your question is whether there is any legal barrier to doing so, however, and inquire as to the possibility of a statute to prohibit the conduct in question. You also ask that I include in my opinion a discussion of whether the amount of the term actually served would bear on the conclusion.
RESPONSE
It is my opinion that the answer to your first question is "yes," and the answer to your second question is that the General Assembly has the power to enact all laws not inconsistent with the Arkansas or United States Constitution. It is difficult to analyze the constitutionality, however, of a hypothetical statute.
Question 1 — p If a legislator voluntarily resigns from office prior tothe end of his or her term, is the unfinished term counted against theterm limit?
In my opinion a court faced with this question would answer in the affirmative.
Amendment 73, the so-called "Arkansas Term Limitation Amendment," provides in pertinent part that:
§ 2 Legislative Branch
 (a) The Arkansas House of Representatives shall consist of members to be chosen every second year by the qualified electors of the several counties. No member of the Arkansas House of Representatives may serve more than three such two year terms.
 (b) The Arkansas Senate shall consist of members to be chosen every four years by the qualified electors of the several districts. No member of the Arkansas Senate may serve more than two such four year terms.
The only Arkansas cases relevant to your first question are United StatesTerm Limits, Inc. v. Hill, 316 Ark. 251, 872 S.W.2d 349 (1994), aff'd subnom. United States Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995); and Moore v. McCuen, 317 Ark. 105, 876 S.W.2d 237 (1994). In Hill, the Arkansas Supreme Court, among other things, interpreted the Amendment to apply prospectively, only to periods of service commencing on or after January 1, 1993. In Moore, the Arkansas Supreme Court held that Amendment 73 did not repeal the two-year terms for state senators provided for after decennial elections and reapportionment under Arkansas Constitution art. 8. See Arkansas Constitution, art. 8, § 6, as amended (Publisher's Notes). Under that procedure, the State Board of Apportionment reapportions the senate districts after the federal decennial census, and all state senators are required to run for office in the next succeeding general election. Id. At the first regular session succeeding any such reapportionment, the senators must divide themselves into two classes by lot. Id. Eighteen of the senators will draw two-year terms and the remaining seventeen will draw four-year terms. Id. This has the effect of staggering the terms of state senators.
The court in Moore v. McCuen held that this procedure was left unaffected by the passage of Amendment 73 and in addition, that the two-year terms drawn under this procedure do not count as a "term," for purposes of term limits. Again, Amendment 73 prohibits a state senator from serving more than two "four-year terms." The court stated:
 We note that Amendment 73 does not mention a cap on the total number of years a senator may serve but only states explicitly that a senator may not "serve more than two such four-year terms." Amendment 73 does not touch on the subject of staggered terms for senators and the assignment of two-year terms by lot for eighteen senators after reapportionment as required by Article 8 as amended.
* * *
 This does not preclude the possibility of a senator serving a two-year term as a result of reapportionment of districts plus two four-year terms after January 1, 1993.
317 Ark. at 108, 111.
The court did indicate it's position, however, that a state senator would be prohibited from serving two four-year terms followed by a two-year term at the end of a census cycle. Id. at 111.
When you state preliminarily that it is your understanding that legislators elected to finish partial terms do not have to count the initial partial term against their limit, I assume that this is an unchallenged practice thought to be consistent with the Moore decision concerning two-year terms of state senators. I have found no more relevant precedent on the point.
I have found no Arkansas precedent at all on the exact issue posed in your first question. That question is whether an unfinished term resulting from the voluntary resignation of a legislator counts as a "term" for purposes of term limits. It is my opinion that the answer to this question is "yes." Although there is no Arkansas precedent on the question, I am persuaded that a court faced with the question would deem the scenario you posit an unconstitutional evasion of Amendment 73.
A similar issue was discussed by the California Court of Appeal, Third District, in Schweisinger v. Jones, 68 Cal. App. 4th 1320,81 Cal. Rptr. 2d 183 (1998). California's term limits provision states that "No member of the Assembly may serve more than 3 [two-year] terms. Cal. Const., art. IV, § 2 (a). There is an exception, however, for persons elected to fill unexpired terms if the remainder of the term is less than half of the full term. Cal. Const. art. XX, § 7. In Schweisinger, an Assembly member served two full terms but was recalled in her third term. She thereafter filed for election for an additional term in the Assembly. The Secretary of State returned her filing papers in light of her perceived ineligibility and she filed a mandamus action against him. Her name was allowed to appear on the ballot by virtue of the preliminary court proceedings, but she lost the election. Although the action was moot, the Court of Appeals decided the important issue, which it felt was likely to recur and escape review.
The California court held that with the one express exception in the constitution itself, service of any part of a term counts as a term under the three-term limit for Assembly members. Although the Schweisinger
court, unlike the Moore court, seemed to eschew the allowance of any additional partial terms, based upon the staggering of terms or for any reason other than the express exception, it did address the "resign to run" scenario you describe as follows:
 Third, Allen's interpretation would create a loophole which would frustrate the intention of the people. A popular politician could run for office repeatedly by resigning just before the end of each term, so that none of his terms would "count" toward the term limitation. For example, John Smith, who is very popular, runs for his first Assembly term and wins. While in office, he runs for and wins another election. Just before the end of term one he resigns. He takes office shortly thereafter at the beginning of the "second" term. He does this repeatedly, and ends up serving most of ten or fifteen terms, but under Allen's interpretation he has not even served one "countable" term for the purposes of the term limitation provisions. Such wholesale evasion would be absurd, therefore we reject the interpretations which would allow it.
81 Cal. Rptr.2d 183 at 187.
It is my opinion similarly, that if the Arkansas Supreme Court were faced with the issue you present, it would not permit the evasion of Amendment 73 which could undoubtedly occur if the partial terms you describe were not counted.
The Moore decision does, however, go to great lengths to emphasize that the Arkansas constitutional limitation is, at least for state senators, a restriction against the serving of more than two "four-year terms." It did not find the initial service of a two-year term followed by two four-year terms problematic. The Moore court did not have before it, however, the "resign to run" scenario you describe. In my opinion, the Arkansas Supreme Court would not countenance such a scenario under Amendment 73.
It is clear that in construing a constitutional provision, a court must look to its history and the mischief intended to be corrected by its passage. Foster v. Jefferson County Quorum Court, 321 Ark. 105,901 S.W.2d 809, 321 Ark. 116-A, 116-E on rehearing (1995). The primary goal is to ascertain and give effect to the intention of state residents.Id. at 116-E. The intention of a constitutional provision must be gathered from both the letter and the spirit of the instrument. State v. New YorkLife Insurance Company, 119 Ark. 314, 171 S.W. 871 (1914). The reason, spirit and intention of a constitutional provision shall prevail over its letter, especially where adherence to the letter would result in absurdity or injustice, would lead to contradiction, or would defeat the plain purpose of the provision. Berry v. Gordon, 237 Ark. 547,376 S.W.2d 279 (1964). See also, Bailey v. Abington, 201 Ark. 1072,149 S.W.2d 573 (1941).
In my opinion the Arkansas Supreme Court, if faced with the question, would conclude that the answer to your first question is "yes," such a partial term would "count" for purposes of Amendment 73.
As to your question about the longevity of the service prior to the resignation, and whether that impacts the outcome, I can offer no clear-cut answer. The California court, in the Schweisinger decision, appeared to count the service of any portion of a term in this regard. It also stated that:
 Regarding this example of an absurd result, we eschew the trial court's implication that the supposed intent of a person leaving office is constitutionally significant. The trial court discounted this hypothetical "because you're talking about a person who deliberately on their [sic] own and due to their [sic] own actions resigns[s] from the office before their [sic] term has been completed." It is not for the courts to divine the intention of a person leaving office in order to determine if he or she is eligible for that or another office — that is a matter for the voters to consider.
81 Cal. Rptr.2d 183 at 187.
I cannot predict with certainty the exact point in a term of service at which the court will find a voluntary resignation renders one ineligible for future service. In my opinion, the court may be reluctant to judicially fashion an arbitrary dividing line (such as less than half the term, etc.) which does not appear in the constitution itself. Likewise, the court may be reluctant to allow evidentiary quests into the motives of individual legislators. See Schweisinger, supra. These factors may lead to the court to adopt an across the board prohibition rule as inSchweisinger. Additionally, the question of whether any legislative action on this point would withstand constitutional scrutiny will be a matter for judicial determination based upon the substance of the legislation.
Question 2 — Also, if the law is unclear in this area, would a statuteprohibiting such behavior (and consistent with the term limits amendment)have legal force to prohibit a candidate from filing?
It is well settled that the Arkansas Constitution is not a grant, but a limitation of powers; and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations imposed by the Arkansas or United States Constitution. Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979). While the United States Constitution is a grant of powers, beyond the scope of which the federal government has no power to act, Arkansas' Constitution is a limitation of power. Its provisions list what government cannot do, and in the absence of such limiting language, the state government may act. State v. Ashley,1 Ark. 513, 538 (1839); St. Louis, I.M.S. Rwy Co. v. State, 99 Ark. 1, 14
(1911); Baratti v. Koser Gin Co., 206 Ark. 813, 817 (1944); Smart v.Gates, 234 Ark. 858, 860 (1961).
If the legislation you describe is, as you posit, consistent with Amendment 73, it may well be within the General Assembly's power to legislate in the area. It must be recognized, however, that any such legislation must not transgress any other provisions of the Arkansas or United States Constitutions. The constitutionality of any proposed legislation in this regard would of course have to be analyzed with reference to its precise content. I cannot opine upon the constitutionality of legislation, the provisions of which are not before me.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh