**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMERENCIANA PETER-PALICAN,
               *Plaintiff-Appellee,*

      v.

GOVERNMENT OF THE
COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS; BENIGNO R.
FITIAL, Governor of the
Commonwealth of the Northern
Mariana Islands, in his official
capacity,
        *Defendants-Appellants.*

No. 10-17153

D.C. No.
1:07-cv-00022
District of the
Northern Mariana
Islands

ORDER
DEFERRING
SUBMISSION
AND CERTIFYING
QUESTIONS TO
THE SUPREME
COURT OF THE
COMMONWEALTH
OF THE
NORTHERN
MARIANA
ISLANDS

Filed March 12, 2012

Before: Alfred T. Goodwin, Stephen S. Trott, and
Mary H. Murguia, Circuit Judges.

---

**ORDER**

The Commonwealth of the Northern Mariana Islands and
Governor Benigno R. Fitial (collectively, "the Common-
wealth") appeal from the district court's judgment in favor of
Emerenciana Peter-Palican in Peter-Palican's suit against the

2761

Commonwealth alleging that then-Acting Governor Timothy Villagomez terminated her from her position as Special Assistant to the Governor for Women's Affairs in violation of Article III, section 22 of the Commonwealth Constitution. The United States District Court for the District of the Northern Mariana Islands held that Article III, section 22 guarantees that once a governor appoints a Special Assistant to the Governor for Women's Affairs, that Special Assistant may never be terminated without cause — even beyond the term of the appointing governor. Relying on the Restatement (Second) of Torts, the district court held also that under Commonwealth law, there exists an implied private right of action for money damages against the Commonwealth for a violation of section 22.

We defer our consideration of this case and certify to the Commonwealth of the Northern Mariana Islands Supreme Court the legal questions dispositive of this appeal.

All further proceedings in this case are stayed pending receipt of the answer to the certified questions or, if the Commonwealth Supreme Court decides not to accept certification, pending that decision. The parties shall notify the clerk of this court within seven days after the Supreme Court accepts or rejects certification, and again within seven days if the Supreme Court renders an opinion. The panel retains jurisdiction over further proceedings.

# I

## QUESTIONS CERTIFIED

Because resolution of this appeal depends on Commonwealth law and because we find no controlling precedent in the decisions of the Commonwealth Supreme Court, we respectfully request, pursuant to Rule 13 of the Northern Mariana Islands Supreme Court Rules, that the Commonwealth Supreme Court exercise its discretion to accept certification of

the following legal questions, the answers to which may be determinative of this appeal:

> 1. Does Article III, section 22 of the Commonwealth Constitution, which states that "[t]he Special Assistant may be removed only for cause," mean that the Special Assistant may *never* be removed from that position without cause — even beyond the term of the appointing governor — or does it mean that the Special Assistant is protected against termination without cause *only* during the term of the appointing governor?

> 2. If the answer to the above question is that Article III, section 22 of the Commonwealth Constitution means the Special Assistant may never be removed for cause even beyond the term of the appointing governor, does Commonwealth law imply a private right of action for monetary damages against the Commonwealth or its officials for violation of that section?

We understand that the Commonwealth Supreme Court may reformulate our questions.

A determination of Commonwealth law with regard to the certified questions will resolve the issues pending before this court. If the Supreme Court declines certification, we will resolve the issues according to our understanding of Commonwealth law. To aid the Supreme Court in deciding whether to accept certification, we provide the following background.

## II

## STATEMENT OF FACTS AND PROCEEDINGS

The Commonwealth Constitution was amended in 1985 following the Second Constitutional Convention. The amend-

ment included a provision establishing the Office of Special Assistant to the Governor for Women's Affairs. Article III, section 22 of the Commonwealth Constitution provides as follows:

> a) There is hereby established an Office of Special Assistant to the Governor for Women's Affairs. The governor shall appoint a person, who is qualified by virtue of education and experience, to be the special assistant. *The special assistant may be removed only for cause*.
>
> b)  It is the responsibility and duty of the special assistant to formulate and implement a policy of affirmative action in the government and private sector to assist women achieve social, political and economic parity. The special assistant shall promote the interests of women, assist agencies of government and private organizations to plan and implement programs and services for women, monitor compliance of laws and regulations by government agencies and private organizations, organize community education strategies regarding the roles of women, and recommend to the governor and the legislature for consideration legislation of benefit to women.
>
> c)  The special assistant may be authorized to hire staff and shall promulgate rules and regulations in carrying out the responsibilities and duties of the office.
>
> d)  The governor shall include in the budget of the executive branch the funding necessary to fully implement the provisions of this section.

N. Mar. I. Const., art. III, § 22 (emphasis added).

In April 2002, then-Governor Juan Babauta appointed Peter-Palican as Special Assistant. Until Peter-Palican was

appointed, each Special Assistant had resigned at or before the end of the term of the governor who appointed her.

During the 2005 gubernatorial race, Peter-Palican campaigned for Governor Babauta's reelection, but Babauta was defeated by Benigno Fitial. In February 2006, Lieutenant Governor Timothy Villagomez, as Acting Governor in Governor Fitial's absence, informed Peter-Palican that her term as Special Assistant had ended when the new administration took office. The letter stated that Peter-Palican's actions in "continuing to occupy the office of Special Assistant for Women's Affairs is contrary to Commonwealth law and custom" and that Peter-Palican would need to vacate her office by April 8, 2006. Although Peter-Palican's internal Notice of Personnel Action established a four-year term of employment, Villagomez wrote that "the ministerial actions of those responsible for completing the paperwork necessary to effectuate your appointment cannot and do not change the legal character of your appointment."

Peter-Palican responded to the Lieutenant Governor by letter, stating that her appointment was protected by Article III, section 22 of the Commonwealth Constitution, that she could be removed only "for cause," and that the administration had "not set forth any legal cause to terminate [her] appointment." She stated that she was "prepared to discuss . . . [an] amicable resolution of this matter," but there was no such resolution. Peter-Palican vacated her office on April 15, 2006.

Peter-Palican filed this action against the Commonwealth and Villagomez under 42 U.S.C. § 1983.[1] She asserted that

---

[1]Pursuant to § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

she was removed without cause in violation of the Commonwealth Constitution and, therefore, without due process as guaranteed by the Fourteenth Amendment to the United States Constitution. She requested monetary damages and a mandatory injunction reinstating her to the Special Assistant position. She also brought claims for retaliation, breach of contract, and detrimental reliance. Peter-Palican did not plead an independent cause of action for violation of the Commonwealth Constitution, nor did she request that the court imply a private right of action into Article III, section 22.

On Peter-Palican's motion for partial summary judgment, the district court, Judge Alex R. Munson, held that the "for cause" provision in Article III, section 22 protected Peter-Palican from ever being removed without cause, even after the governor who appointed her left office. The court rejected the Commonwealth's argument that the constitutional language was ambiguous and that the correct interpretation was that the "for cause" protection lasted only through the term of the appointing governor. The court recognized that Peter-Palican's interpretation would allow a Special Assistant, who is responsible for implementing the policies of the governor with respect to women's issues, to serve under a governor who did not share her political or policy views. The district court concluded, however, that this "unfortunate" situation was not absurd or impracticable. The court thus held that Peter-Palican had a property interest in continued employment protected by the Due Process Clause of the Fourteenth Amendment.

The district court next concluded that Peter-Palican was not removed for cause. Concluding that Villagomez "was in possession of the plain language of the [Commonwealth] Constitution," the court held that he was not entitled to qualified immunity in his individual capacity.[2]

---

[2]Additionally, the court granted summary judgment to the Commonwealth on Peter-Palican's liberty interest due process claim, but determined that genuine issues of material fact precluded summary judgment on the breach of contract and retaliation claims. Those claims are not before us at this time.

On interlocutory appeal, we reversed the district court's denial of summary judgment to Villagomez on the basis of qualified immunity. We reasoned,

> There is no case law interpreting the Commonwealth of the Northern Mariana Islands' constitutional provision creating the Special Assistant for Women's Affairs, and no special assistant before Emerenciana Peter-Palican asserted that the position's tenure extended past the term of the appointing governor. Any right Peter-Palican had to continued employment as special assistant past that term was therefore not clearly established. Even assuming that Acting Governor Timothy Villagomez took affirmative steps to terminate Peter-Palican's employment, . . . he is entitled to qualified immunity in the absence of controlling authority interpreting the provision.

*Peter-Palican v. N. Mar. I.*, No. 08-15704, 332 Fed. Appx. 377, 378 (9th Cir. May 26, 2009) (unpublished). Thus, Peter-Palican could not recover damages under § 1983 from the governor in his individual capacity. Governor Fitial was later substituted for Villagomez with respect to Peter-Palican's official capacity claims.

The case was assigned to district judge John C. Coughenour for a bench trial on Peter-Palican's remaining claims. Following a one-day trial, the district court relied on the law of the case doctrine and the previous summary judgment order in concluding that Peter-Palican had a "legitimate claim of entitlement to her constitutionally created position and was entitled to some sort of procedure to contest her removal." Therefore, the court found that Peter-Palican's removal violated the Due Process Clause.

The district court ordered that Peter-Palican be reinstated "to a Commonwealth government position at a salary equal to

or greater than that she had as Special Assistant for Women's Affairs." The court recognized, however, that a violation of Peter-Palican's right to due process could not be the basis of a damages award under § 1983 because the Commonwealth and its officials acting in their official capacity, when sued for monetary relief, are not "persons" within the meaning of the statute. *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992); *but see Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("When sued for *prospective injunctive relief*, a state official in his official capacity is considered a 'person' for § 1983 purposes.").

Finding that reinstating Peter-Palican would not fully compensate her for "the past wrong done to her by defendants for violating her Commonwealth due process rights under . . . the Commonwealth Constitution," the court went on to conclude, sua sponte, that "as a matter of law . . . there is an implied cause of action against the Commonwealth government and its officials acting in their official capacities when the Commonwealth Constitution is violated and there is no express constitutional or statutory cause of action or remedy." The district court relied on the Restatement (Second) of Torts in awarding Plaintiff approximately $216,000 in damages under this implied constitutional tort theory. The court analogized its decision to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), in which the United States Supreme Court recognized a damages remedy for a private citizen injured by a federal official's violation of the Fourth Amendment.

There were no findings of fact on Peter-Palican's other claims, and the district court denied the Commonwealth's post-judgment motion for a new trial, for amended or additional factual findings, or for an award of front pay in lieu of reinstatement. The district court did not address the Commonwealth's argument that Peter-Palican had never asserted an independent, implied right of action under Article III, section 22.

The Commonwealth appeals the district court's grant of partial summary judgment to Peter-Palican, its findings and conclusions after the bench trial, and its denial of the Commonwealth's post-judgment motion.

## III

## EXPLANATION OF CERTIFICATION

Rule 13 of the Northern Mariana Islands Supreme Court Rules allows a federal court to certify questions of Commonwealth law to that court. Certification may be requested if the certifying court believes that "[t]he question may be determinative in the proceedings before it" and "[t]here is no controlling precedent in the decisions of" the Commonwealth Supreme Court. N. Mar. I. Sup. Ct. Rule 13(a).

"Use of certification rests in the sound discretion of this court." *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984). The Commonwealth now asks for certification, even though it did not raise the certification issue before the district court. "[P]articularly compelling reasons must be shown when certification is requested for the first time on appeal by a movant who lost on the issue below." *Id.* As we explain below, because of the importance of territorial sovereignty in matters of territorial governance and the lack of clear answers in Commonwealth law, we conclude that such compelling reasons exist in this case.

## A

### The Absence of Controlling Precedent

There is no controlling precedent on the meaning of Article III, section 22, as no Commonwealth court has ever interpreted that provision. Further, we disagree with the district court's conclusion that the provision is so clear that it can be interpreted in only one way.

Under the principles of statutory interpretation applicable in Commonwealth law, "language must be given its plain meaning." *N. Mar. College v. Civil Serv. Comm'n*, 2007 MP 8, ¶ 9 (N. Mar. I. 2007). "The general principles which apply to statutory construction are equally applicable in cases of constitutional construction." *Camacho v. N. Mar. Retirement Fund*, 1 N.M.I. 131, 134 (N. Mar. I. 1990) (internal quotation marks omitted). Commonwealth courts "apply the plain, commonly understood meaning of constitutional language unless there is evidence that a contrary meaning was intended." *Id.* (internal quotation marks omitted).

However, "language must be read in the context of the entire" provision, *Town House, Inc. v. Saburo*, 2003 MP 2, ¶ 11 (N. Mar. I. 2003), and "[a] court should avoid interpretations of a statutory [or constitutional] provision which would defy common sense or lead to absurd results," *Commonwealth Ports Auth. v. Hakubotan Saipan Enters., Inc.*, 2 N.M.I. 212, 224 (N. Mar. I. 1991) (internal quotation marks and alteration omitted). If a provision is ambiguous, a court's objective "is to ascertain and give effect to the intent of the legislature." *Aguon v. Marianas Pub. Land Corp.*, 2001 MP 4, ¶ 30 (N. Mar. I. 2001) (per curiam). In determining the drafters' intent, the statute or constitutional provision "must be read as a whole, and not as isolated words contained therein," *id.*, and "[o]ne statutory [or constitutional] provision should not be construed to make another provision inconsistent or meaningless," *In re Estate of Rofag*, 2 N.M.I. 18, 29 (N. Mar. I. 1991).

The constitutional language at issue here appears to us to be ambiguous because there are two reasonable interpretations of Article III, section 22. We begin with Peter-Palican's suggested interpretation. As counsel noted at oral argument, the final sentence of subsection (a), upon which Peter-Palican relies, contains only nine words: "The special assistant may be removed only for cause." There are no textual exceptions to the "for cause" termination requirement, nor is there any express limitation on the term of the Special Assistant. Unless

"cause" includes a change in the administration, which the Commonwealth does not argue, the "for cause" sentence could be read to mean that the protection from termination extends indefinitely.

In addition to the constitutional text, Peter-Palican points to the history of the Second Constitutional Convention to support her argument that a sitting governor cannot without cause remove a former governor's Special Assistant. The initial draft of the language of Article III, section 22 stated that the Special Assistant "shall serve at the pleasure of the governor." Such a provision would have allowed the governor to remove the Special Assistant at any time and for any reason. *See DeLeon Guerrero v. Dep't of Pub. Lands*, 2011 MP 3, ¶ 10 (N. Mar. I. March 31, 2011) (not yet certified for publication) (stating that the phrase "at the pleasure of" in the context of employment is "a synonym for 'at-will' "). But the final draft, amended after a public hearing, used the "for cause" language instead. The record does not disclose precisely what occurred at the public hearing, but from the textual change we assume that the hearing likely included at least some discussion of termination protections for the Special Assistant.

At oral argument, both parties hypothesized that the Second Constitutional Convention intended at least to some degree to depoliticize the position, to insulate it from the political games that might otherwise influence a governor's decision to replace a Special Assistant. Counsel for Peter-Palican stated that the Special Assistant was intended to be a kind of gadfly, whose purpose of advancing women's rights — and her actions in furtherance of that purpose — could trigger animosity among other government officials. Such a person would need some sort of protection against her removal in order for her to be nonpolitical and effective. Thus, it could be that the Convention intended section 22 to mean that the Special Assistant may *never* be removed without cause, even by a subsequent governor.

We do not believe this is the *only* rational construction of the provision, however. The Commonwealth argues that other language in section 22, when read in context with the "for cause" sentence, supports such an alternate interpretation, as does the nature of the office itself. In addition to the "for cause" provision, section 22 also states that "*[t]he governor shall appoint* a person, who is qualified by virtue of education and experience, to be the special assistant." (emphasis added). For several reasons, it seems reasonable to construe the words "the governor" to mean "*each* governor."

First, just as there is no express limitation on the term of the Special Assistant once a governor appoints her, there is also no express limitation on any *subsequent* governor's power or responsibility to appoint a Special Assistant. Without any such limitation in the text or further explanation in case law, an incoming governor might indeed have the power to appoint a special assistant of that governor's choice. Reading the "governor shall appoint" language together with the "for cause" language could suggest that the Special Assistant is protected from termination without cause by the governor who appointed her, but that such protection does not extend past the term of that appointing governor.

Second, as the Commonwealth points out, the Special Assistant is a cabinet-level appointee. She is charged with formulating and implementing the policy of the governor with respect to affirmative action and women's issues, assisting administrative agencies with implementing such programs, recommending legislation to the governor and the legislature, and promulgating administrative regulations regarding women's rights. N. Mar. I. Const., art. III, § 22. The Special Assistant works closely with the governor and his administration, and if Peter-Palican's interpretation is correct, a governor might be forced to confer with a Special Assistant who does not share the governor's preferred policies on women's issues. Some political appointments, in order to accomplish their objectives, require that the appointees agree with the

administration on policymaking and on those policies themselves. *Cf. Branti v. Finkel*, 445 U.S. 507, 515-16, 517-18 (1980) (a public employee may be terminated on the basis of political belief without violating the First Amendment if "the government can demonstrate an overriding interest of vital importance," for example, if the employee's position requires "that a person's private beliefs conform to those of the hiring authority" or involves policymaking or confidentiality (internal quotation marks and citation omitted)).

The Commonwealth notes that, in some jurisdictions, "[t]he general rule is that a governmental body may not, in the exercise of its powers, appoint an individual to a term extending beyond the term of office of the governmental body. The term of an appointed office . . . expires with the expiration of the term of the appointing body." *Rawlins v. Levy Court of Kent County*, 235 A.2d 840, 841 (Del. 1967). Such a default rule can be justified by the nature of the political branches of government. Each administration generally has the same powers and duties as the next — or the former. *See Zerr v. Tilton*, 581 P.2d 364, 372 (Kan. 1978) ("And the test generally applied is whether the contract at issue, extending beyond the term [of the contracting authority], is an attempt to bind successors in matters incident to their own administration and responsibilities . . . [,] [i]n [which] case the contract is generally held invalid." (internal quotation marks omitted)).

Under this reasoning, just as one governor has the power to appoint a Special Assistant, so might the next governor. This is not to say that the Commonwealth cannot alter this general rule, but it does give us reason to be wary of adopting Peter-Palican's interpretation without further guidance from the Commonwealth Supreme Court.

Finally, the Convention's substitution of the ultimate "for cause" language for the initial "at the pleasure of the governor" language is not dispositive of the meaning of Article III, section 22. Although the change in the proposed amendment

certainly evidences an intent to ensure that the Special Assistant's appointment would not be at-will, it does not necessarily follow that the Special Assistant can remain in office even under a subsequent — and unwilling —administration. With no evidence in the record of the substance of the public hearing on the draft of the 1985 constitutional amendment, we cannot say with certainty that the Convention intended to grant the Special Assistant a lifetime appointment.

Our concerns engendered by the lack of controlling precedent are equally applicable to the implied constitutional tort theory utilized by the district court under the Restatement (Second) of Torts. Article III, section 22 says nothing about a private right of action, unlike other provisions of the Commonwealth Constitution that expressly address the issue. *See, e.g.*, N. Mar. I. Const. art. I, § 3(c) ("A person adversely affected by an illegal search or seizure has a cause of action against the government within limits provided by law."); N. Mar. I. Const. art. X, § 9 ("A taxpayer may bring an action against the government or one of its instrumentalities in order to enjoin the expenditure of public funds for other than public purposes or for a breach of fiduciary duty.").

The Commonwealth Code adopts the Restatements "in the absence of written law or local customary law to the contrary." 7 N. Mar. I. Code § 3401. The Restatement (Second) of Torts permits, *but does not require*, a court to imply a right of action for a violation of a statutory or constitutional right where there is no express remedy provided:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, *the court may*, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action

> or a new cause of action analogous to an existing tort action.
>
> . . . .
>
> [Comment a.] As used in this Section, the term "legislative provision" includes . . . constitutional provisions.

Restatement (Second) Torts, § 874A & cmt. a (emphasis added). Section 874A uses the word "may"; therefore, implying a private right of action for damages for a violation of the Commonwealth Constitution is permissive rather than mandatory.

The Commonwealth Supreme Court has not yet considered whether Article III, section 22 gives rise to a private right of action. In fact, we have found only two cases in which § 874A of the Restatement was cited, and in both cases the court declined to address the issue. *Juan v. N. Mar. I.*, 2001 MP 18, ¶ 27 (N. Mar. I. 2001) ("Assuming, without deciding, that Article I, § 3(c) [of the Commonwealth Constitution] directly provides a private right of action, persons subjected to an illegal or wrongful search or seizure[ ] have a right to institute a civil action against the government for damages."); *Charfauros v. Bd. of Elections*, 1998 MP 16, ¶ 42 n.8 (N. Mar. I. 1998) ("Plaintiffs asserted no cause of action in the complaint for damages arising from the violation of Article I, § 6 [of the Commonwealth Constitution]. We need not now, therefore, consider whether such an action is "appropriate" or "necessary" under RESTATEMENT (SECOND) OF TORTS § 874A.").

The permissive nature of § 874A persuades us that the Supreme Court is better equipped to resolve the question. We have little specialized expertise in Commonwealth law and, therefore, little way of knowing whether, faced with the situation here, a Commonwealth court would exercise its discretion under § 874A to imply a private right of action. The

important question of whether the territorial government may be sued, particularly for money damages, pursuant to a private right of action implied from that territory's constitution should not to be decided in the first instance by a federal court.

## B

### The Answers to the Certified Questions Will Be Determinative

The Supreme Court's decision on the first certified question — the interpretation of Article III, section 22 — will definitively resolve the question of whether Peter-Palican can pursue a § 1983 due process claim for violation of that provision. The threshold requirement of a due process claim is the existence of a liberty or property interest. The Due Process Clause prohibits the government from depriving an individual of such an interest without following the proper procedures for doing so. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state [or territorial] law," *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks omitted), and "[p]ublic employees who may be dismissed only for cause possess a property interest in their continued employment," *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011) (per curiam).

Thus, if the Commonwealth Constitution granted Peter-Palican a property interest in continued employment even beyond the term of former Governor Babauta, her due process rights could have been violated when the Commonwealth allowed her no opportunity to contest the constitutionality of her dismissal. If, however, Peter-Palican had no such property interest, then she has no colorable due process claim. Similarly, the Supreme Court's answer to the second certified question will conclusively determine whether Peter-Palican

can assert an independent claim for damages under Article III, section 22.

## IV

## CONCLUSION

There is no controlling precedent on the meaning of Article III, section 22 of the Commonwealth Constitution or on the existence of an implied private right of action for violation of that section. The Commonwealth Supreme Court's answers to the certified questions will be determinative of the issues in this appeal, and that court is in a much better position to interpret its own constitution. Because the Commonwealth Supreme Court should have the opportunity to define the meaning of the Commonwealth's foundational document, "considerations of comity and federalism favor resolution of the certified question[s] by [the Commonwealth's] highest court." *Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, 650 F.3d 1268, 1269 (9th Cir. 2011).

For the foregoing reasons, we respectfully request that the Supreme Court of the Commonwealth of the Northern Mariana Islands accept certification of the two questions identified in Part I of this request.

## V

## ADMINISTRATIVE INFORMATION

Counsel for the parties are as follows:

For Plaintiff-Appellee Emerenciana Peter-Palican:

Douglas F. Cushnie
Proas Lane
P.O. Box 500949

Saipan, MP 96950
(670) 234-6830

For Defendants-Appellants Commonwealth of the
Northern Mariana Islands and Governor Benigno R.
Fitial in his official capacity:

Gilbert J. Birnbrich
Office of the Attorney General
Juan A. Sablan Memorial Building,
Second Floor
Caller Box 10007, Capital Hill
Saipan, MP 96950
(670) 664-2341

Pursuant to Northern Mariana Islands Supreme Court Rule 13(b), the clerk of this court is hereby directed to forward this request, under official seal of the United States Court of Appeals for the Ninth Circuit, to the Commonwealth Supreme Court. The parties shall notify the clerk of this court within seven days of any decision by the Supreme Court to accept or to decline certification. If the Supreme Court accepts certification, the parties shall then notify the clerk of this court within seven days of the issuance of that court's opinion. Submission of this appeal is deferred pending the Commonwealth Supreme Court's response to this request.

**SUBMISSION DEFERRED AND QUESTIONS CERTIFIED.**