**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EMERENCIANA PETER-PALICAN,
        *Plaintiff-Appellee,*

v.

GOVERNMENT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; BENIGNO R. FITIAL, Governor of the Commonwealth of the Northern Mariana Islands, in his official capacity,
        *Defendants-Appellants.*

No. 10-17153

D.C. No.
1:07-cv-00022

OPINION

Appeal from the United States District Court
for the District of the Northern Mariana Islands
John C. Coughenour, District Judge, Presiding

Argued February 16, 2012
Honolulu, Hawaii

Submission Deferred March 12, 2012
Resubmitted August 15, 2012

Filed August 22, 2012

Before: Alfred T. Goodwin, Stephen S. Trott, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Trott

9607

**COUNSEL**

Gilbert J. Birnbirch, Office of the Attorney General, Saipan, MP, for the defendants-appellants.

Douglas F. Cushnie, Saipan, MP, for the plaintiff-appellee.

**OPINION**

TROTT, Circuit Judge:

The Commonwealth of the Northern Mariana Islands and Governor Benigno R. Fitial (collectively, "the Commonwealth") appeal the district court's judgment in favor of plaintiff Emerenciana Peter-Palican. Peter-Palican alleges that she was terminated without cause from her position as Special Assistant to the Governor for Women's Affairs in violation of Article III, section 22 of the Commonwealth Constitution. The district court agreed, determining that Peter-Palican had a property interest in continued employment as the Special Assistant and was terminated without due process by the incoming governor.

Because the resolution of this case requires an interpretation of the Commonwealth Constitution, we certified questions to the Commonwealth Supreme Court and have now received its answer. Based on the meaning of Article III, section 22 as determined by the final arbiter of Commonwealth law, we hold that Peter-Palican did not have a protected interest in continued employment beyond the term of the governor who appointed her. Therefore, her termination without cause did not violate the Due Process Clause, and the district court's judgment cannot stand.

**I**

The relevant facts of this case are set forth in our certification order, *Peter-Palican v. Government of Northern Mariana*

*Islands*, 673 F.3d 1013 (9th Cir. 2012). In brief, Peter-Palican was appointed as Special Assistant to the Governor for Women's Affairs in April 2002 by then-Governor Juan Babauta. *Id.* at 1015. Governor Fitial defeated Babauta in the 2005 gubernatorial race, and shortly thereafter Acting Governor Timothy Villagomez informed Peter-Palican that her employment had ended upon the change in administration and asked her to leave; there was no allegation that Peter-Palican had done anything wrong or had engaged in conduct constituting "cause" for her termination. *Id.*

## II

Article III, section 22 of the Commonwealth Constitution describes the position of the Special Assistant for Women's Affairs and states, "The special assistant may be removed only for cause." N. Mar. I. Const., art. III, § 22 ("section 22"). Peter-Palican sued the Commonwealth under 42 U.S.C. § 1983, arguing that section 22 protected her against termination without cause even by a new administration. Peter-Palican also asserted claims of retaliation, breach of contract, and estoppel.

After granting partial summary judgment to Peter-Palican and presiding over a bench trial, the district court entered judgment in favor of Peter-Palican, holding that (1) under section 22, Peter-Palican had a property interest in continued employment even beyond the term of the governor who appointed her, and (2) her termination without cause therefore violated the Due Process Clause. *Peter-Palican*, 673 F.3d at 1017. The district court ordered the Commonwealth to reinstate Peter-Palican "to a Commonwealth government position at a salary equal to or greater than that she had as Special Assistant for Women's Affairs." *Id.* Recognizing that Peter-Palican could not recover monetary damages under 42 U.S.C. § 1983,[1] the district court also implied a private right of action

---

[1]Only "persons" are subject to suit under § 1983, and the Commonwealth and its officials acting in their official capacity are not considered "persons" when sued for damages. *Peter-Palican*, 673 F.3d at 1017.

against the Commonwealth for violation of section 22 — a claim Peter-Palican had not pleaded — and awarded her approximately $216,000 in damages. *Id.* The district court did not rule on Peter-Palican's other claims. The Commonwealth appealed.

On March 12, 2012, we certified to the Supreme Court of the Commonwealth of the Northern Mariana Islands the following questions:

1. Does Article III, section 22 of the Commonwealth Constitution, which states that "[t]he Special Assistant may be removed only for cause," mean that the Special Assistant may never be removed from that position without cause—even beyond the term of the appointing governor—or does it mean that the Special Assistant is protected against termination without cause *only* during the term of the appointing governor?

2. If the answer to the above question is that Article III, section 22 of the Commonwealth Constitution means the Special Assistant may never be removed for cause even beyond the term of the appointing governor, does Commonwealth law imply a private right of action for monetary damages against the Commonwealth or its officials for violation of that section?

*Id.* at 1014. The Supreme Court graciously accepted certification and, on June 29, 2012, issued its opinion in *Peter-Palican v. Government of the Commonwealth of the Northern Mariana Islands*, 2012 MP 7 (N. Mar. I. 2012).

The Commonwealth Supreme Court answered the first certified question as follows:

> [W]e hold that article III, section 22 of the Common-
> wealth Constitution . . . which states that "[t]he spe-
> cial assistant may be removed only for cause,"
> means that the Special Assistant to the Governor for
> Women's Affairs . . . is protected against termination
> without cause only during the term of the appointing
> governor.

*Id.* at ¶ 2. Because the answer to the first question is disposi-
tive of the issues in this appeal, the Supreme Court declined
to address the second certified question. *Id.*

### III

**[1]** The Commonwealth Supreme Court's authoritative
interpretation of Commonwealth law conclusively establishes
that Peter-Palican did not have a property interest in contin-
ued employment once the new governor took office. There-
fore, although she was protected from termination without
cause during the term of Governor Babauta — the governor
who appointed her — incoming Governor Fitial and Acting
Governor Villagomez were constitutionally allowed to termi-
nate her without cause.

The Commonwealth Supreme Court's prompt decision is
attached to this opinion as the Appendix, and we adopt its rea-
soning and its conclusions. Because Peter-Palican no longer
possessed a property interest in continued employment once
the new governor took office, her due process claims fail. And
because the Commonwealth did not violate section 22 or the
Due Process Clause by terminating her without cause, any
implied constitutional tort claim fails as well.

**[2]** Therefore, we vacate the district court's judgment in
favor of Peter-Palican, including its award of damages and
injunctive relief. Because the district court did not address
Peter-Palican's retaliation, breach of contract, or estoppel
claims, we remand for further proceedings consistent with this

opinion as well as that of the Commonwealth Supreme Court, set forth in the Appendix.

**VACATED and REMANDED.**

**APPENDIX**



E-FILED
CNMI SUPREME COURT
E-filed: Jul 23 2012 2:12PM
Clerk Review: Jul 23 2012 2:13PM
Filing ID: 45478306
Case No.: 2012-SCC-0010-CQU
Jennifer Dockter

IN THE
**SUPREME COURT**
OF THE
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

**EMERENCIANA PETER-PALICAN,**
Plaintiff-Appellee,

v.

**GOVERNMENT OF THE COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS; BENIGNO R. FITIAL, Governor of the Commonwealth of the Northern
Mariana Islands, in his official capacity,**
Defendants-Appellants.

**SUPREME COURT NO. 2012-SCC-0010-CQU**
UNITED STATES COURT OF APPEALS, NINTH CIRCUIT NO. 10-17153
D.C. NO. 1:07-cv-00022, District of the Northern Mariana Islands

**Cite as: 2012 MP 7**

Decided June 29, 2012

Douglas F. Cushnie, Saipan, MP, for Plaintiff-Appellee.
Charles Brasington and Gilbert Birnbrich, Office of the Attorney General, Saipan, MP, for Defendants-Appellants.

BEFORE: ALEXANDRO C. CASTRO, Acting Chief Justice; JOHN A. MANGLONA, Associate Justice; ROBERT C. NARAJA, Justice Pro Tem.

CASTRO, J.:

¶ 1        On March 12, 2012, the United States Court of Appeals for the Ninth Circuit certified the following two questions for resolution by this Court:

> 1.        Does Article III, section 22 of the Commonwealth Constitution, which states that "[t]he Special Assistant may be removed only for cause," mean that the Special Assistant may *never* be removed from that position without cause — even beyond the term of the appointing governor — or does it mean that the Special Assistant is protected against termination without cause *only* during the term of the appointing governor?
>
> 2.        If the answer to the above question is that Article III, section 22 of the Commonwealth Constitution means the Special Assistant may never be removed for cause even beyond the term of the appointing governor, does Commonwealth law imply a private right of action for monetary damages against the Commonwealth or its officials for violation of that section?

*Peter-Palican v. Commonwealth*, 673 F.3d 1013, 1014 (9th Cir. 2012).

¶ 2        For the reasons stated herein, we hold that article III, section 22 of the Commonwealth Constitution ("section 22")[1], which states that "[t]he special assistant may be removed only for cause," means that the Special Assistant to the Governor for Women's Affairs ("Special Assistant") is protected against termination without cause only during the term of the appointing governor.[2]   Because we reach this result on the first question, we decline to address the second certified question.

**I**

¶ 3        Former Governor Juan N. Babauta appointed Plaintiff-Appellee Emerenciana Peter-Palican ("Peter-Palican") as Special Assistant in April 2002.[3]  Before Peter-Palican's appointment, each previous

---

[1]        Section 22 reads:

(a)  There is hereby established an Office of Special Assistant to the Governor for Women's Affairs. The governor shall appoint a person, who is qualified by virtue of education and experience, to be the special assistant. The special assistant may be removed only for cause.

(b)  It is the responsibility and duty of the special assistant to formulate and implement a policy of affirmative action in the government and private sector to assist women achieve [sic] social, political and economic parity. The special assistant shall promote the interests of women, assist agencies of government and private organizations to plan and implement programs and services for women, monitor compliance of laws and regulations by government agencies and private organizations, organize community education strategies regarding the roles of women, and recommend to the governor and the legislature for consideration legislation of benefit to women.

(c)  The special assistant may be authorized to hire staff and shall promulgate rules and regulations in carrying out the responsibilities and duties of the office.

(d)  The governor shall include in the budget of the executive branch the funding necessary to fully implement the provisions of this section.

NMI Const. art. III, § 22.

[2]        The Court deemed oral argument unnecessary in this matter.  NMI Sup. Ct. Rule 13(c)(4).

[3]        This factual background relies upon the factual background provided by the United States Court of Appeals for the Ninth Circuit in *Peter-Palican*, 673 F.3d at 1014-17.

Special Assistant resigned at or before the end of the term of the appointing governor. In February 2006, under a new administration, Peter-Palican received a letter from Lieutenant Governor Timothy P. Villagomez informing her that her term as Special Assistant ended with Babauta's term and that "continuing to occupy the office of the Special Assistant for Women's Affairs is contrary to Commonwealth law and custom . . . ." Peter-Palican Excerpts of Record ("P-P ER")[4] at 10. The letter noted that the "Notification of Personnel Action" Peter-Palican received from the Commonwealth upon her appointment purported to establish a four-year term of employment, which would have expired in April 2006. However, Villagomez's letter went on to say "[i]t is not known why these documents seemingly contain a fixed term for your appointment, but the ministerial actions of those responsible for completing the paperwork necessary to effectuate your appointment cannot and do not change the legal character of your appointment [as one without a fixed term]." *Id.* In response to the letter from Villagomez, Peter-Palican sent a letter to the Governor in which she noted that section 22 made the Special Assistant a position that can only be removed for cause and that the Commonwealth's rationale did not constitute cause for termination. Peter-Palican ultimately vacated her office in April 2006 after her efforts to resolve the issue with the Commonwealth failed.

¶ 4    After vacating her office, Peter-Palican filed an action against the Commonwealth in the United States District Court for the District of the Northern Mariana Islands ("District Court") alleging violations of 42 U.S.C. § 1983. The District Court granted Peter-Palican's motion for partial summary judgment, holding that section 22 protected Peter-Palican's position even after the end of the term of her appointing governor absent good cause for removal. After an interlocutory appeal of the decision that is irrelevant to determination of the certified question, the District Court held that Peter-Palican's removal violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. It also held that section 874A of the Restatement (Second) of Torts entitled Peter-Palican to recover damages from the Commonwealth for its violation of the Commonwealth Constitution and awarded Peter-Palican $216,000 in damages. The Commonwealth appealed the District Court's decision and the United States Court of Appeals for the Ninth Circuit deferred submission of the appeal pending this Court's resolution of the certified questions presently before us.

---

[4]    As we noted in *J.G. Sablan Rock Quarry, Inc. v. Department of Public Lands*, 2012 MP 2 (Slip Opinion March 30, 2012), "pursuant to Commonwealth Supreme Court Rule 30, the Appendix to the Briefs should be a *single* appendix prepared and filed by the appellant after conferring with the appellee. NMI Sup. Ct. R. 30(b)(1)." *Id.* ¶ 3 n.2. In this matter, Peter-Palican and the Commonwealth filed separate excerpts of record in this Court with no evidence of any attempt to meet and confer in order to file a single joint appendix. We repeat our admonition to all parties appearing before this Court in the future to comply with Rule 30.

## II

Federal courts may certify questions of Commonwealth law to this Court where: (1) the question may be determinative in the proceedings before the federal court; and (2) we have no controlling precedent on the question. NMI Sup. Ct. R. 13(a).[5] The Ninth Circuit's order certifying questions to this Court stated that there is "no controlling precedent in the decisions of the Commonwealth Supreme Court" as to the questions and that answers to the questions "may be determinative of this appeal . . . ." *Peter-Palican*, 673 F.3d at 1014.[6] We find that the two necessary elements are satisfied here.

## III

"A basic principle of constitutional construction is that language must be given its plain meaning." *N. Marians Coll. v. Civil Serv. Comm'n*, 2007 MP 8 ¶ 9. We "apply the plain, commonly understood meaning of constitutional language 'unless there is evidence that a contrary meaning was intended.'" *Camacho v. N. Marianas Ret. Fund*, 1 NMI 362, 368 (1990) (quoting *Pangelinan v. Commonwealth*, 2 CR 1148, 1161 (D. N. Mar. I. App. Div. 1987)). As part of our analysis, we must read constitutional language "in the context of the entire" provision at issue. *Town House, Inc. v. Saburo*, 2003 MP 2 ¶ 11. Interpretations that "would defy common sense or lead to absurd results" should be avoided. *Commonwealth Ports Auth. v. Hakubotan Saipan Enters., Inc.*, 2 NMI 212, 224 (1991) (internal quotations marks and citation omitted). In the event that a constitutional provision is ambiguous, we must attempt to "ascertain and give effect to the intent of" the drafters of the provision. *Aguon v. Marianas Pub. Land Corp.*, 2001 MP 4 ¶ 30. Finally, we are hesitant to interpret constitutional language in a way that deviates from the common law absent a clear indication of an intention to do so by the drafters of the provision at issue. *See Commonwealth v. Hasinto*, 1 NMI 377, 383 (1990) ("[A]bsent an indication that the legislature intends a statute to supplant common law, the courts should not give it that effect." (internal quotation marks and citation omitted)).

With these considerations in mind, we turn now to the language of section 22. Subsection (a) of section 22 states that "[t]he governor shall appoint" a Special Assistant and that this Special Assistant "may be removed only for cause." NMI Const. art. III, § 22(a). Section 22 is silent regarding an explicit term for the tenure of the Special Assistant. Because section 22 does not specify a term of employment for the Special Assistant, we find that the provision is ambiguous and susceptible to more than one

---

[5]    The foundation for this Supreme Court Rule is article IV, section 1 of the Commonwealth Constitution, which provides that "[t]he judicial power of the Commonwealth shall be vested in a judiciary of the Northern Mariana Islands . . . ." NMI Const. art. IV, § 1.

[6]    The Ninth Circuit noted that "[b]ecause the Commonwealth Supreme Court should have the opportunity to define the meaning of the Commonwealth's foundational document, 'considerations of comity and federalism favor resolution of the certified question[s] by [the Commonwealth's] highest court.'" *Peter-Palican*, 673 F.3d at 1022 (quoting *Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, 650 F.3d 1268, 1269 (9th Cir. 2011)).

interpretation. Peter-Palican urges us to hold that the lack of a term of employment evinces an intention on the part of the drafters of section 22 to make the Special Assistant position one of life tenure. Peter-Palican Opening Br. at 18 ("The tenure is during what may be styled as good behavior."). The Commonwealth, on the other hand, relies on the language "[t]he governor shall appoint [a Special Assistant]" to argue that *each* governor may appoint his or her own Special Assistant. Commonwealth Opening Br. at 9 ("When read as a whole, [section 22] means that *each* Governor appoints his or her own Special Assistant, which [sic] can only be removed for cause during the Governor's term."). The Commonwealth thus reasons that the "for cause" language in section 22 protects the Special Assistant only during the term of the appointing governor. In light of this ambiguity, we must explore: (1) the legislative history of the constitutional amendment adding section 22 to the Commonwealth Constitution; and (2) the common law as it applies to interpretation of provisions similar to section 22.

### A. Legislative History from the Second Constitutional Convention

¶ 8      In 1985, the Commonwealth organized a Second Constitutional Convention to consider amendments to the Commonwealth Constitution. Section 22 originated as Delegate Proposal 121-85, which called for the creation of a Special Assistant "who shall serve at the pleasure of the governor . . . ." P-P ER at 43. A Committee on Governmental Institutions issued a "Notice of Public Hearing," stating that a public hearing regarding delegate proposal 121-85 would occur on July 13, 1985. Commonwealth Excerpts of Record ("Commonwealth ER") at 104. Neither the Court nor the parties have been able to locate any additional information about this public hearing. However, a report by the Committee on Governmental Institutions indicates that a public hearing took place regarding Delegate Proposal 121-85. Commonwealth ER at 92 ("The Committee conducted a public hearing on Delegate Proposal 121-85 . . . ."). The committee report contains a two page report as well as an attached recommendation ("Committee Recommendation No. 57"), which includes amendments to Delegate Proposal 121-85. Committee Recommendation No. 57 removed the "at the pleasure of the governor" language of the original proposal and replaced it with language stating that "[t]he Special Assistant may be removed only for good cause." *Id.* at 94. The committee report stated that the amendments to the proposal "reflect the recommendations and concerns expressed by the witnesses [at the public hearing]." *Id.* at 92. The report also states that Committee Recommendation No. 57 "conforms fully with the intent of [Delegate Proposal 121-85]." *Id.* at 93. During the consideration of Committee Recommendation No. 57 by the full constitutional convention, the delegates made further amendments to the proposal irrelevant to this matter and ultimately adopted the current text of section 22 on July 20, 1985. *Id.* at 111.

¶ 9      Peter-Palican focuses on the committee amendment to delegate proposal 121-85 that converted the position from "at will"[7] to "for cause" employment and argues that this amendment shows legislative intent to insulate the position from political interference. The concept of "for cause" employment relates to the showing that must be made before an individual may be removed from office. *LaPointe v. Bd. of Educ.*, 878 A.2d 1154, 1159 (Conn. 2005). "For cause" employment is properly juxtaposed with "at will" employment, where employees may be removed "at any time for any reason, or for no reason at all." *McLean v. Hyland Enters.*, 2001 WY 111, ¶ 21, 34 P.3d 1262, 1268 (Wyo. 2001). Unlike "at will" employment, "for cause" employees can only be removed for conduct that "specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public." *LaPointe*, 878 A.2d at 1159 (internal quotation marks and citation omitted). "Cause implies a reasonable ground for removal as distinguished from a frivolous or incompetent ground." *Id.* (internal quotation marks and citation omitted). Grounds providing adequate cause for removal include neglect of duty, inefficiency, and the good faith abolition of the position. *McSweeney v. Town Manager of Lexington*, 401 N.E.2d 113, 116 (Mass. 1980). Thus, we agree with Peter-Palican that the amendment changing the Special Assistant position from "at will" to "for cause" employment added security to the position. However, as discussed next, we do not agree that the amendment demonstrates any legislative intent to make the Special Assistant position one of life tenure.

¶ 10     Peter-Palican's argument that the addition of "for cause" protection also gave the Special Assistant position life tenure incorrectly conflates the concepts of "for cause" employment and life tenure. "For cause" employment relates to the level of justification required to terminate an employee while life tenure relates to the *length* of a term of employment. The difference between "for cause" employment and life tenure is apparent from the fact that positions with explicit terms are sometimes also afforded the protection of "for cause" employment. For example, the Commonwealth's Public Auditor has a term of six years, 1 CMC § 2302(b), *and* may only be removed for cause, NMI Const. art. III, § 12. *See also* NMI Const. art. XX, § 1 (Civil Service Commission members "shall serve a term of six years . . . [and] may be removed only for cause."). Because of the difference between these two concepts, we find that the amendment to delegate proposal 121-85 is insufficient, standing alone, to demonstrate that the delegates intended the Special Assistant position to have life tenure.

¶ 11     Peter-Palican also relies on a discussion from the Second Constitutional Convention regarding another (ultimately unsuccessful) proposed amendment to delegate proposal 121-85 that would have placed the Special Assistant within the Commonwealth Department of Community and Cultural Affairs.

---

[7]     While the original version of delegate proposal 121-85 uses the phrase "at the pleasure of," P-P ER at 43, we will use the phrase "at will" employment since the two phrases are interchangeable. *Deleon Guerrero v. Dep't of Pub. Lands*, 2011 MP 3 ¶ 10 (approving of trial court's conclusion that "at the pleasure of" employment is synonymous with "at will" employment).

Peter-Palican Reply Br. at 1-4. Much of the discussion related to this proposed amendment concerned the desire to depoliticize the Special Assistant position and insulate that position from political influence. *E.g.*, Commonwealth ER at 113-14 ("I think it is very important to insulate this office from politics."). This discussion does not support Peter-Palican's argument. The proposed amendment's method of insulating the position from politics was the placement of the position within the Department of Community and Cultural Affairs. However, the discussion related to insulation from politics associated with this proposed amendment is irrelevant to the language of section 22 since the delegates did not ultimately adopt the proposed amendment that would have placed the Special Assistant within the Department of Community and Cultural Affairs.

¶ 12        In sum, we find no conclusive evidence in the foregoing legislative history to decide the question before us. The legislative history does not support Peter-Palican's assertion that the Special Assistant position is one of life tenure. Nor does it provide clear evidence to support the Commonwealth's argument that the term of the Special Assistant ends with the term of the appointing governor. Because our review of the legislative history regarding section 22 has not resolved the issue before us, we must look to the common law for tools of construction relevant to interpretation of provisions like section 22.[8]

B.        *Common Law Tools of Statutory Construction Applicable to Interpretation of Section 22*

¶ 13        "Where a constitutional provision prescribing the term of a public office is uncertain or doubtful in its construction, that interpretation will be followed which limits the term to the shortest time." *Aggeler v. Dominguez*, 19 P.2d 241, 242 (Cal. 1933) (internal quotation marks and citation omitted); *accord Schweisinger v. Jones*, 81 Cal. Rptr. 2d 183, 187-89 (Cal. Ct. App. 1998) (using tool of construction to hold that assemblywoman who was recalled by voters during her third term could not run again because of proposition limiting assemblypersons to three terms); *State ex rel. Birrell v. Speak*, 180 N.E. 264, 266 (Ohio 1932) (using tool of construction; adopting shorter of two terms of office for municipal court judges when statutory provision was ambiguous as to applicable term).[9] The dispute in *Aggeler* stemmed from the California Legislature's creation of new municipal court judge positions. 19 P.3d at 241. Pursuant to statute, municipal court judges were to hold office for "six years, or until his successor is elected and qualifies." *Id.* Vacancies were to be filled by gubernatorial appointment and

---

[8]        *See* 7 CMC § 3401 ("the rules of the common law . . . as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary"); *cf. Hasinto*, 1 NMI at 383 ("[A]bsent an indication that the legislature intends a statute to supplant common law, the courts should not give it that effect." (internal quotation marks and citation omitted)).

[9]        For other jurisdictions that have adopted this tool of construction, see *Opinion of the Justices of the Supreme Court*, 330 A.2d 764, 767 (Del. 1974) (using tool of construction); *State ex rel. Major v. McKay*, 155 S.W. 396, 397 (Mo. 1913) (same); *People ex rel. Harris v. Brenham*, 3 Cal. 477, 487 (Cal. 1853) (same); *State ex rel. Eldred v. Palmer*, 21 A.D. 101, 107-08 (N.Y. App. Div. 1897) (same).

would hold office "until the expiration of the term of the office to which he was appointed, and until his successor is elected and qualified." *Id.* (internal quotation marks and citation omitted). The governor appointed judges to fill the newly created positions. *Id.* at 242. After two years in office, the judges who were appointed brought suit to keep the city clerk from preparing their positions for election. *Id.* The judges claimed that the statute entitled them to six-year terms. *Id.*

¶ 14        The *Aggeler* court first recognized the tool of interpretation that positions with ambiguous terms of office should be interpreted to limit the position to the shortest possible term. *Id.* Applying this doctrine to the statute at issue, the court noted that the term of the appointed municipal court judges was ambiguous because they were only to hold office "until the expiration of the term to which [they were] appointed." *Id.* Because of this ambiguity, the court looked to a provision of the California Constitution stating that positions appointed by the governor generally only extend until the next popular election. *Id.* In light of the tool of construction limiting terms to the shortest possible time, the ambiguous term of office for the municipal court judges, and the general constitutional provision, the court rejected the judges' argument and held that the judges only held office until the next popular election. *Id.*

¶ 15        While the common law tool of construction limiting ambiguous terms of office to the shortest possible length is generally restated without explanation, the reasoning underlying the tool appears to be one of judicial restraint. The judicial restraint shown in these cases reflects an understanding that the legislature is the proper branch of government to specify longer terms of office. For example, in *State ex rel. Birrell v. Speak*, the plaintiffs were municipal court judges who had been elected to office. 180 N.E. at 264. The statute creating the positions did not fix specific terms; it merely stated that each judge held office "until his successor is elected and qualified." *Id.* at 265 (internal quotation marks and citation omitted). While the statute creating the positions did not specify a term, a provision of the Ohio Constitution stated that judges were to be elected in even-numbered years and that their terms of office may not exceed six years. *Id.* From this constitutional provision, the judges asserted that they had the right to a six-year term of office. *Id.* After noting the ambiguity regarding the judges' term of office, the Ohio Supreme Court noted that "the settled rule of law we think is that [the judges] should be given the shortest term which the Constitution allows." *Id.* at 266. Based on the constitutional provision providing for judicial elections in even-numbered years, the court held that, in the absence of legislation to the contrary, the municipal court judges were entitled to a two-year term. *Id.* Importantly, the court noted that it was the duty of the Ohio Legislature, not the Ohio Supreme Court, to fix any greater term of office than the two-year term recognized by the court. *Id.* (noting that the court's holding "will afford ample opportunity for the next Legislature, if it deems best, to cure the situation . . . .").

¶ 16        Applying this rule of construction to section 22, we have already noted that the section is ambiguous as to the term of the Special Assistant. Because section 22 is "uncertain or doubtful in its

construction," *Aggeler*, 19 P.2d at 242, and there is no statutory provision setting a term for the position, the tool of construction suggests against holding that the Special Assistant position has life tenure. Since another equally tenable construction of section 22 is that the Special Assistant holds office only until the expiration of the term of the appointing governor, we are inclined to adopt this more limited term of office. Limiting the term of the Special Assistant to the term of the appointing governor does not run contrary to any language in section 22 and comports with the tool of construction instructing courts to limit ambiguous terms of office to the shortest possible time. Moreover, this interpretation prevents intrusion upon the power of the Commonwealth Legislature to set the term of office for positions for which no term of office is specified. *See, e.g.*, 1 CMC § 2302(b) (setting term of office for Public Auditor at six years).

¶ 17          Further support for setting the term of the Special Assistant as lasting only as long as the term of the appointing governor comes from another common law principle of construction that states that "apart from statute . . . [,] a public officer cannot give an appointee a tenure of office beyond his own." *Opinion of the Justices to the Governor and Council*, 175 N.E. 644, 646 (Mass. 1931) (hereafter "*Opinion of the Justices (Mass.)*") (citing *Commonwealth v. Higgins*, 70 Mass. 34, 35 (Mass. 1855)); *accord Ross v. Hanson*, 227 A.2d 606, 609 (Me. 1967) ("Plainly the plaintiff's tenure until the effective date of the 1965 Act did not extend beyond the term of the appointing secretary's term."); *Howard v. State Bd. of Ret.*, 89 N.E.2d 758, 759 (Mass. 1950) ("It is the general rule of the common law apart from statute that a public officer cannot give an appointee a tenure of office beyond his own." (internal quotation marks and citation omitted)); *In re Rawlins*, 235 A.2d 840, 841 (Del. 1967) ("The general rule is that a governmental body may not, in the exercise of its powers, appoint an individual to a term extending beyond the term of office of the governmental body."); 63C Am. Jur. 2d *Public Officers and Employees* § 87 (2012) ("An appointing authority generally may not, in the exercise of its powers, appoint an individual to a term extending beyond its own term of the office.").

¶ 18          In *Opinion of the Justices (Mass.)*, a statutory provision allowed the elected public auditor to appoint a deputy public auditor "who may be removed by [the public auditor] for cause at any time . . . ." 175 N.E. at 646 (internal quotation marks and citation omitted). After the election of a new public auditor, this new public auditor attempted to appoint a new deputy public auditor. *Id.* at 645. The previous deputy public auditor refused to resign, arguing that he was entitled to continue on in his position as deputy public auditor unless and until the public auditor could find good cause to remove him. *Id.* On certified question from the governor, the Supreme Judicial Court of Massachusetts held that the deputy public auditor's term ended upon completion of the term of the appointing public auditor. *Id.* at 646. The court noted that in the absence of a statute fixing the term of the deputy public auditor, "[t]he inference is not permissible that he holds office for life or during good behavior . . . ." *Id.* While the

court did not elaborate on why such an inference of life tenure is impermissible, this reasoning is most likely based on the general presumption in the United States against interpreting constitutional and statutory provisions to create life tenures in the absence of explicit language to that effect. *See De Castro v. Bd. of Comm'rs of San Juan*, 322 U.S. 451, 462 (1944) (recognizing a "strong presumption against the creation of a life tenure in a public office" (citing *Shurtleff v. United States*, 189 U.S. 311, 316 (1903)). Regarding an argument that the absence of a term limit in a statute meant an appointee had life tenure, the Supreme Court in *Shurtleff* noted that:

> We think it quite inadmissible to attribute an intention on the part of Congress to make such an extraordinary change in the usual rule governing the tenure of office . . . without stating such intention in plain and explicit language, instead of leaving it to be implied from doubtful inferences.

*Shurtleff*, 189 U.S. at 316.

¶ 19     Peter-Palican argues that the foregoing cases are distinguishable because they concerned positions created by statute instead of by constitutional provision. Peter-Palican Opening Br. at 10. She claims that we should rely on *Opinion of the Justices of the Supreme Judicial Court Given Under the Provision of Section 3 of Article VI Of the Constitution*, 343 A.2d 196, 203 (Me. 1975), which held that "[w]hen the Constitution fixes the tenure of a civil office, it is beyond the power of the Legislature to affect the tenure." However, this opinion is distinguishable and irrelevant to the certified question before us since the Commonwealth Constitution does not conclusively fix the tenure of the Special Assistant.

¶ 20     Like the holdover deputy public auditor in *Opinion of the Justices (Mass.)*, Peter-Palican argues that the absence of a term of employment means that she may continue as Special Assistant subject only to removal for cause. It is difficult to believe that the delegates at the Second Constitutional Convention would have made the Special Assistant a position with life tenure without doing so through an express grant of authority. The unreasonableness of such an assertion is further demonstrated by a review of the Commonwealth Constitution, where *no* position in government is entitled to life tenure. *See, e.g.*, NMI Const. art. II, §§ 2(b), 3(a) (general terms for senators and representatives are four years and two years, respectively); NMI Const. art. III, § 4 (governor's term is four years); NMI Const. art. IV, § 5 ("Justices shall serve terms of eight (8) years and judges shall serve terms of six (6) years."). Thus, this common law rule of construction lends further support for our holding that, in the absence of statutory language to the contrary, the Special Assistant's term expires with the expiration of the term of the appointing governor.

## IV

¶ 21     For the foregoing reasons, we hold that article III, section 22 of the Commonwealth Constitution, which states that "[t]he special assistant may be removed only for cause," means that the Special Assistant to the Governor for Women's Affairs is protected against termination without cause only during

the term of the appointing governor.  Because we reach this result on the first question, we decline to address the second certified question.

SO ENTERED this 29th day of June, 2012.

/s/
ALEXANDRO C. CASTRO
Acting Chief Justice

/s/
JOHN A. MANGLONA
Associate Justice

/s/
ROBERT C. NARAJA
Justice Pro Tem